IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MYLES J. HANNIGAN, | No. 4:22-CV-00152 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| STEPHEN SPAULDING, | |
| Respondent. | |

MEMORANDUM OPINION

JULY 26, 2022

Petitioner Myles J. Hannigan, an inmate confined at the Federal Prison Camp, Lewisburg at the time of filing, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He challenges the determination made by the Federal Bureau of Prisons (BOP) in calculating his earned time credits under the First Step Act of 2018.[1] For the reasons that follow, the Court will dismiss Hannigan's Section 2241 petition.

I.   BACKGROUND

Hannigan is currently serving a 52-month sentence imposed by the United States District Court for the Eastern District of Pennsylvania for numerous federal tax offenses.[2] His projected release date is October 22, 2022.[3]

---

[1] Pub. L. 115-391, 132 Stat. 5194 (2018).
[2] *See United States v. Hannigan*, No. 2:19-CR-00373, Doc. 27 (E.D.P.A. Feb. 14, 2020).
[3] Doc. 1-1; Doc. 8-1 at 3 ¶ 3.

Hannigan asserts that the BOP has miscalculated how many earned time credits (ETCs) he has accumulated during his incarceration.[4] He claims that he is owed 10.5 months of ETCs and that, because his current projected release date is October 22, 2022, he should be immediately released.[5]

Hannigan does not directly state in his petition whether he pursued administrative remedies with the BOP, but it does not appear that he did.[6] Respondent—Warden Stephen Spaulding—has responded to Hannigan's Section 2241 petition,[7] arguing that Hannigan failed to exhaust his administrative remedies and that his claim additionally fails on the merits.

## II. DISCUSSION

Hannigan's argument is not complex. He contends that he should have received 315 days or 10.5 months in ETCs under the FSA but was only awarded 202 days by the BOP.[8] He also maintains that, despite being credited with 202 days of ETCs, his projected release date—October 22, 2022—has not changed.[9] Hannigan's petition is a classic example of why administrative exhaustion is required so that the BOP could have addressed Hannigan's claims in the first instance.

---

[4] *See generally* Doc. 1.
[5] *Id.* at 4.
[6] *See* Doc. 1 at 2 ¶¶ 7-9, 12 (indicating that he has not filed any appeals).
[7] *See generally* Doc. 8.
[8] *See* Doc. 1 at 4; Doc. 1-2.
[9] *See* Doc. 1 at 4; Doc. 1-2.

### A.     Administrative Exhaustion

Although there is no explicit statutory exhaustion requirement for Section 2241 habeas petitions, the United States Court of Appeals for the Third Circuit has consistently held that exhaustion applies to such claims.[10] Exhaustion allows the relevant agency to develop a factual record and apply its expertise, conserves judicial resources, and provides agencies the opportunity to "correct their own errors" thereby fostering "administrative autonomy."[11] The BOP has a specific internal system through which federal prisoners can request review of any aspect of their imprisonment.[12] That process begins with an informal request to staff and progresses to formal review by the warden, appeal with the Regional Director, and—ultimately—final appeal to the General Counsel.[13]

Exhaustion is the rule in most cases, and failure to exhaust will generally preclude federal habeas review.[14] Only in rare circumstances is exhaustion of administrative remedies not required. For example, exhaustion is unnecessary if the issue presented is one that involves only statutory construction.[15] Exhaustion is

---

[10] *See Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) (citing *Schandelmeier v. Cunningham*, 819 F.2d 52, 53 (3d Cir. 1986); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996).
[11] *Moscato*, 98 F.3d at 761-62 (citations omitted)
[12] *See generally* 28 C.F.R. §§ 542.10-.19.
[13] *See id.* §§ 542.13-.15.
[14] *See Moscato*, 98 F.3d at 761.
[15] *See Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012) (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)).

likewise excused when it would be futile.[16]

According to BOP records, Hannigan filed two administrative remedy requests concerning ETCs under the FSA.  Hannigan first filed administrative remedy number 1093735-F1 on September 9, 2021, but this request was summarily rejected because Hannigan had failed to first attempt informal resolution.[17] Hannigan next filed administrative remedy number 1108781-F1 on February 1, 2022, and this remedy was likewise rejected because he had not attempted informal resolution.[18]

It is clear from the record that Hannigan has failed to exhaust his administrative remedies.  Moreover, he has not responded to Respondent's exhaustion argument, nor has he offered any explanation as to why exhaustion should be excused.  Consequently, the Court must dismiss his Section 2241 petition.[19]

### B.   Application of FSA Earned Time Credits

Even if Hannigan would have properly exhausted his FSA claim, he fails to rebut Respondent's well-reasoned response that success on the instant claim would actually result in a less favorable release date.  Respondent aptly explains why

---

[16] *Rose v. Lundy*, 455 U.S. 509, 516 n.7 (1982); *see Cottillion v. United Refining Co.*, 781 F.3d 47, 54 (3d Cir. 2015) (affirming, in ERISA context, futility exception to exhaustion requirement).
[17] *See* Doc. 8-1 at 4 ¶ 5; *id.* at 19.
[18] *See* Doc. 8-1 at 4 ¶ 5; *id.* at 22.
[19] *See Moscato*, 98 F.3d at 761.

application of 202 days (or even 315 days, according to Hannigan's calculations) of ETCs does not alter Hannigan's October 22, 2022 release date and why Hannigan's instant petition consequently is meritless.

Hannigan is currently participating in the Residential Drug Abuse Program (RDAP).[20] He has also been credited with 202 days of ETC under the FSA.[21] According to Jennifer Knepper, Attorney Advisor for the BOP, "Inmates participating in [RDAP] and who qualify for [18 U.S.C. §] 3621(e) early release are also eligible to receive FSA [E]TCs, assuming they are otherwise eligible; however, credits are only applied to the extent they permit the inmate to complete *all components* of the RDAP, to include the Transitional Drug Abuse Treatment ("TDAT") component."[22]

Hannigan's statutory release date, without the (up to) one-year early release incentive under Section 3621(e)(2)(B) for successful completion of RDAP, is October 22, 2023.[23] Thus, Hannigan actually benefits from an earlier release date—October 22, 2022—by participating in RDAP, which includes the required TDAT component, than by application of the ETCs.[24] Were the BOP to apply the ETCs, Hannigan could not complete the TDAT component in a halfway house and therefore could not satisfy all the requirements for RDAP, thereby barring the one-

---

[20] Doc. 8-1 at 4-5 ¶ 9; *see* 28 C.F.R. § 550.53.
[21] *Id.* at 5 ¶ 10.
[22] *Id.* ¶ 11 (emphasis added); *see* 28 C.F.R. §§ 550.53, 550.56(a).
[23] Doc. 8-1 at 5 ¶ 12.
[24] *Id.* ¶¶ 11-12.

year early release incentive under Section 3621(e)(2)(B) and creating a less-favorable release date of approximately April 3, 2023 (or December 11, 2022, under Hannigan's ETC calculations).[25]

Hannigan received this thorough explanation in Respondent's response to the instant Section 2241 petition. It is, presumably, the reason why Hannigan has not pursued any further administrative remedies or filed a reply to Respondent's Section 2241 response. It is also a poignant example of why administrative exhaustion is required. Judicial resources need not have been wasted on the instant meritless Section 2241 petition when the BOP could have simply provided this explanation to Hannigan in the administrative remedy process.

### III. CONCLUSION

For the foregoing reasons, the Court will dismiss Hannigan's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[25] *See* 28 C.F.R. § 550.56(a) ("For inmates to successfully complete all components of RDAP, they must participate in [Community Treatment Services (CTS)]. If inmates refuse or fail to complete CTS, they fail RDAP and are disqualified for any additional incentives.").